# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-1818

_____

United States of America

*Plaintiff - Appellee*

v.

Kevin Allen Dalasta

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 13, 2017
Filed: May 8, 2017

_____

Before LOKEN, BEAM, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Kevin Dalasta, who suffers from depression, anxiety, and medically intractable epilepsy, became upset and held a gun to his chin following an argument with his father. Police officers were called to the parents' residence in Polk County, Iowa, and removed four firearms. Dalasta was indicted for being a prohibited person in possession of the firearms in violation of 18 U.S.C. §§ 922(g)(4) and 924(a)(2). He was released into his father's custody.

The government moved for a hearing to determine Dalasta's competency to stand trial. See 18 U.S.C. § 4241(a). Dr. Eric Barlow conducted an outpatient evaluation and reported that "it would not be possible to restore Kevin to a level of competency to stand trial." See § 4241(b). After hearings in December 2015 and March 2016, see § 4241(c), the district court[1] found by a preponderance of the evidence that Dalasta was not competent to stand trial. Pursuant to § 4241(d), the court committed him to the custody of the United States Bureau of Prisons ("BOP") to determine whether his competency could be restored. Dalasta appeals the commitment order, arguing (i) the district court erred in construing § 4241(d) as requiring commitment when uncontested facts establish that treatment cannot restore his competency to stand trial; (ii) a strict interpretation of § 4241(d) is unconstitutional as applied to him; and (iii) the district court erred in neglecting alternate means of accomplishing the statute's purpose. We have jurisdiction to review this interlocutory order under the collateral order doctrine. See United States v. Henriques, 698 F.3d 673, 673 (8th Cir. 2012), cert. denied, 133 S. Ct. 1513 (2013). Reviewing issues of law *de novo*, we affirm.

**I.**

Dalasta underwent a temporal lobectomy to remedy worsening seizures in March 2012. At the time, he was facing a charge of vehicular homicide in Polk County District Court. Based on an evaluation by psychiatrist Michael Taylor, the state court suspended the proceedings indefinitely, see Iowa Code § 812.5(2), and granted the State's request for additional medical examination to determine if Dalasta could be restored to competency. In July 2012, Dr. Taylor reported to the state court: "Mr. Dalasta is Not Competent to stand trial, and most-likely never will be." Dr. Barlow reported in August 2012: "I am providing Mr. Dalasta with . . . biological

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

treatment for his PTSD and depression/anxiety . . . . It is impossible for Mr. Dalasta to be restored to competency, as his cognitive problems . . . are the result of the removal of the [left temporal lobe] of his brain. These are not reversible changes." Dr. Robert Jones opined in March 2013 that Dalasta would never regain competency to stand trial. After a hearing, the state court found in May 2013 there was no substantial probability that Dalasta's competency could be restored in a reasonable amount of time and dismissed the state court prosecution without prejudice.

In his initial report to the district court in this case, Dr. Barlow stated: "My report on [Dalasta's] status is essentially the same as it was in August 2012 when I felt clearly, and still do, that it would not be possible to restore Kevin to a level of competency to understand the nature and consequences of the proceedings against him or to even begin to assist himself in his own defense." Dr. Barlow concluded that these problems "are never going to change." The district court recognized at the December 2015 hearing that it could find by clear and convincing evidence that Dalasta cannot be restored to competency because part of his brain is "simply missing. That's not going to change, based on our evaluation." The court requested briefing to determine whether § 4241(d) required that Dalasta be committed to the Attorney General's custody, or permitted the court other options.

At the March 2016 hearing, defense counsel argued against mandatory commitment, relying on years of medical records, the state court's prior ruling, and a recent report from Dr. Barlow stating: "To transfer Kevin to the Bureau of Prisons is a waste of resources [and] will not provide any new meaningful information to this case. Kevin has had literally brain surgery in the form of a temporal lobectomy to eliminate his seizure disorder. This has resulted in cognitive and memory deficits that will not improve with time." A questionnaire asked whether there is "any length of inpatient treatment that can be provided to Kevin to allow him to gain a level of competency that would permit him to proceed with his federal case." Dr. Barlow replied, "absolutely not." Counsel argued that commitment to the BOP would be

potentially harmful, removing Dalasta from his family, who administer his medication "like clockwork," to a BOP facility where he may receive generic drugs.

Defense counsel urged the court to proceed immediately to a dangerousness hearing under 18 U.S.C. § 4246(d), which determines whether a defendant whose competence to stand trial cannot be restored "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." The government argued that the plain language of § 4241(d) and governing Eighth Circuit precedent mandated that Dalasta first be committed to the custody of the Attorney General to complete an assessment of whether he could regain the competence to stand trial, and if not, an initial evaluation of the § 4246 dangerousness determination.

The district court noted the unique fact that "[t]here's no fix" to the missing part of Dalasta's brain. Nonetheless, the court concluded, § 4241(d) mandates commitment of a defendant found incompetent to the custody of the Attorney General: "[T]he statute says 'shall' . . . [a]nd the cases follow that same analysis." The court stated that "the next stage we're going to reach pretty clearly is the dangerousness assessment [under § 4246], and [the BOP] may be able to help us in that assessment with their observations of him." Because Dalasta must rely on his elderly parents as care-givers, the court noted that a BOP assessment would be useful in determining "how he will do in a structured environment whe[n] his parents aren't an option and whether or not that has to be in a custodial situation or whether he might do well in a residential facility of some kind. . . . The BOP are experts at that kind of analysis." Consistent with § 4241(d), the court entered a sealed Order committing Dalasta to the BOP for no longer than four months to complete the restoration-of-competency assessment. The court permitted him to self-report to the designated BOP facility, requested that the BOP expedite its competency evaluation, and stayed its Order pending this appeal.

-4-

**II.**

**A.** On appeal, Dalasta argues the district court erred in interpreting § 4241(d), because requiring commitment to BOP custody when there is "no probability that Dalasta will attain the capacity to permit the trial to proceed" is "completely futile" and produces an absurd result that is contrary to the purpose of the statute. As relevant here, § 4241(d) provides, with emphasis added:

> (d) Determination and disposition. --- If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in this defense, the court *shall* commit the defendant to the custody of the Attorney General. The Attorney General *shall* hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward . . . .

> If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

In United States v. Shawar, 865 F.2d 856, 860 (7th Cir. 1989), the Seventh Circuit concluded: "The plain meaning of this phrase [shall commit] is, and we hold it to be, that once a defendant is found incompetent to stand trial, a district judge has no discretion in whether or not to commit him." In three cases, this court has agreed that § 4241(d) imposes a mandatory duty to commit a defendant who is found incompetent to the custody of the Attorney General, even if there is undisputed medical evidence that the defendant cannot be restored to competency. See

-5-

Henriques, 698 F.3d at 675; United States v. Millard-Grasshorn, 603 F.3d 492, 494 (8th Cir.), cert. denied, 562 U.S. 938 (2010); United States v. Ferro, 321 F.3d 756, 761 (8th Cir.), cert. denied, 540 U.S. 878 (2003); accord United States v. Magassouba, 544 F.3d 387, 404-05 (2d Cir. 2008) (collecting cases). The statute's legislative history confirms its plain meaning: "If the court makes a finding of incompetency, it must then commit the defendant to the custody of the Attorney General." S. Rep. No. 98-225, at 236 (1983). Dalasta suggests that our prior cases construing "shall" as mandatory are "antiquated," but of course they are nonetheless binding on our panel.

Though we are bound in any event to follow the statute's plain meaning and our prior decisions, we do not agree that commitment to the custody of the Attorney General is absurd if it is apparent the defendant's competency to stand trial cannot be restored. First, in most cases, whether treatment authorized by § 4241(d) will improve the defendant's mental condition sufficiently to permit the criminal proceedings to go forward is an uncertain issue Congress committed initially to medical professionals, before the court finally decides whether trial must be postponed indefinitely. See Ferro, 321 F.3d at 762 and cases cited. Second, even when the medical evidence suggests no chance that competency can be restored, as in this case, commitment under § 4241(d) provides the Attorney General's medical experts an opportunity to evaluate the defendant's dangerousness if he were released from custody after a § 4246(a) hearing. Indeed, before a § 4246(a) hearing, the statute permits the district court to commit the defendant to the Attorney General's custody for a psychiatric or psychological examination. See 18 U.S.C. §§ 4246(b), 4247(b). Here, as the district court noted, Dalasta's firearms offense and need for constant care by aging parents strongly indicated that the assistance of BOP experts would be needed in the § 4246 analysis. See Shawar, 865 F.2d at 861-62; Ferro, 321 F.3d at 762.

**B.** Dalasta further argues that "forcing [his] commitment to the BOP, far from home, for invasive evaluations, for up to four months, when physicians say it would be detrimental to his health (and completely futile)" violates his liberty interest under the Due Process Clause. We disagree. "[C]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Revels v. Sanders, 519 F.3d 734, 740 (8th Cir. 2008) (quotation omitted). However, Congress "has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill." Addington v. Texas, 441 U.S. 418, 426 (1979). In 18 U.S.C. § 4241, Congress crafted a three-step process for determining a defendant's competency to stand trial. See United States v. Deters, 143 F.3d 577, 579-80 (10th Cir. 1998). In completing the first step, the district court *may* commit the defendant for a mental health examination. Only after the court has *found* the defendant to be incompetent to stand trial at step two, does § 4241(d) mandate a limited commitment to the Attorney General prior to a final determination at step three, either that the criminal trial may proceed, or that the incompetent defendant must be found dangerous or be released. The limited commitment mandated by § 4241(d) complies with due process limitations outlined in Jackson v. Indiana, 406 U.S. 715, 738 (1972); see Ferro, 321 F.3d at 762; United States v. Filippi, 211 F.3d 649, 651-52 (1st Cir. 2000).

**C.** Finally, Dalasta argues that, even if § 4241(d) mandated his commitment, the district court erred in not ordering a non-custodial alternative, such as sending his medical records to be reviewed by a medical examiner of the Attorney General's choosing, relying on a local expert to conduct the analysis the BOP would perform at its facilities, or ordering an examination by BOP at a suitable facility located in the Des Moines area. This is a discretionary decision Congress has delegated to the Attorney General, not to the district court.

Section 4241(d) provides that the Attorney General "shall hospitalize the defendant for treatment in a suitable facility." Thus, the first alternative suggested

by Dalasta, review of medical records, is foreclosed by the statute. However, Congress has granted the Attorney General discretion in choosing a "suitable facility" for the hospitalization of "a person committed to his custody pursuant to this chapter." 18 U.S.C. §§ 4247(a)(2), 4247(i); see S. Rep. No. 98-225, at 236.

At oral argument, we expressed concern that the district court's Order committed Dalasta to the custody of the BOP, not the Attorney General, as § 4241(d) mandates. The district court record includes a copy of the BOP's December 2004 Guidelines for Forensic Evaluations, which includes the statement, "§ 4241(d) is an inpatient evaluation, and must be done in a BOP Psychiatric Referral Center with an inpatient unit." If that statement reflects an inflexible BOP policy, the BOP may be unduly restricting the Attorney General's statutory discretion to choose a "suitable facility" if circumstances in an unusual case warranted, for example, hospitalization in a local facility accessible to BOP medical experts and less harmful to the defendant.

Dalasta did not raise this issue in the district court. The Attorney General's regulations expressly authorize the Director of BOP to perform "the functions of the Attorney General under the provisions of . . . 18 U.S.C. 4241-4247," 28 C.F.R. § 0.96(j), and prior cases have committed defendants directly to the custody of BOP as the Attorney General's authorized designee. See, e.g., Magassouba, 544 F.3d at 395. Thus, the district court's form of order was not plain error. But consistent with the district court's Order requesting the BOP to expedite its "testing and evaluations" of Dalasta, and without addressing whether this exercise of the Attorney General's discretion would be subject to judicial review in another case, we encourage the BOP not to inflexibly restrict its exercise of discretion in carrying out the Attorney General's § 4241(d) mandate.

The district court's Order Filed Under Seal dated March 28, 2016 is affirmed.

_____