19-262-cr
*United States v. Brennan*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2018

(Argued: April 16, 2019                    Decided:  July 2, 2019)

Docket No. 19-262

_____

UNITED STATES OF AMERICA,

*Appellee*,

v.

DONALD BRENNAN,

*Defendant-Appellant*.

_____

Before: KEARSE, WINTER, and POOLER, *Circuit Judges*.

Donald Brennan brings an interlocutory appeal of the January 25, 2019,

order of the United States District Court for the Western District of New York

(Elizabeth A. Wolford, *J*.) committing him to the custody of the Attorney General

for psychiatric treatment and evaluation pursuant to 18 U.S.C. § 4241(d). Brennan

argues that the district court's commitment order violates his due process rights because a forensic psychologist, who conducted a court-ordered psychiatric evaluation of Brennan's present competency to stand trial, stated that Brennan's disorder was degenerative and would not significantly improve with treatment. Brennan's argument fails, however, because, pursuant to 18 U.S.C. §§ 4241 *et seq.*, commitment to assess future competency is mandatory, and only the district court, and not a forensic psychologist, can determine whether Brennan will regain competency in the foreseeable future. In the absence of such a decision from the district court, Brennan's commitment to the custody of the Attorney General for treatment and further evaluation is reasonably related to determining whether Brennan will regain competency in the foreseeable future, and the district court constitutionally applied Section 4241(d)'s commitment procedures to Brennan. We AFFIRM the order of the district court committing Brennan to the custody of the Attorney General under Section 4241(d).

   Affirmed.

                         _____

                         MARTIN J. VOGELBAUM, Federal Public Defender's
                         Office, Western District of New York, Buffalo, NY, *for
                         Defendant-Appellant*.

MONICA J. RICHARDS, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee.*

POOLER, *Circuit Judge*:

Donald Brennan brings an interlocutory appeal of the January 25, 2019, order of the United States District Court for the Western District of New York (Elizabeth A. Wolford, *J.*) committing him to the custody of the Attorney General for psychiatric treatment and evaluation pursuant to 18 U.S.C. § 4241(d). Brennan argues that the district court's commitment order violates his due process rights because a forensic psychologist, who conducted a court-ordered psychiatric evaluation of Brennan's present competency to stand trial, stated that Brennan's disorder was degenerative and would not significantly improve with treatment. Brennan's argument fails, however, because, pursuant to 18 U.S.C. §§ 4241 *et seq.*, commitment to assess future competency is mandatory, and only the district court, and not a forensic psychologist, can determine whether Brennan will regain competency in the foreseeable future. In the absence of such a decision from the district court, Brennan's commitment to the custody of the Attorney

3

General for treatment and further evaluation is reasonably related to determining whether Brennan will regain competency in the foreseeable future, and the district court constitutionally applied Section 4241(d)'s commitment procedures to Brennan. We AFFIRM the order of the district court committing Brennan to the custody of the Attorney General under Section 4241(d).

**BACKGROUND**

Donald Brennan is charged with failing to register as a sex offender, as required by the Sex Offender Registration and Notification Act, when he moved from Lake City, Florida, to Buffalo, New York. App'x at 9-13. Brennan is required to register as a sex offender for life following his 2014 conviction for lewd molestation of an elderly or disabled person in the third degree. The unfortunate facts of this case are related to Brennan's long and complicated history of severe alcohol abuse.

The current proceeding arises from Brennan's encounter with police on February 15, 2018, when authorities followed up on a report that a man was disoriented and covered in excrement in Cheektowaga, New York, and discovered Brennan, who was homeless, on the sidewalk outside a strip mall. About a week after encountering Brennan on the streets of Cheektowaga, the

4

police inquired with the New York State Board of Examiners of Sex Offenders regarding whether Brennan was required to register as a sex offender, and the Board confirmed that he was required to do so. The authorities then determined that Brennan was not properly registered in New York and brought a failure-to-register charge against Brennan.

Brennan was appointed a federal defender, but his counsel reported to the court that Brennan's mental limitations prohibited him from assisting counsel in preparing his case. Counsel informed the court that he had not been able to meaningfully discuss the case with Brennan because Brennan was suffering from "some pretty significant memory issues and issues in general regarding his circumstances right now." App'x at 37. Brennan's testimony before the court confirmed counsel's concerns, as Brennan told the court that he did not know what was going on and that at times he did not even remember to whom he was talking. Defense counsel moved for a competency hearing and filed a notice of intent to assert an insanity defense, at which point the government moved for an evaluation of Brennan's sanity at the time of the offense. The district court ordered a competency evaluation and an evaluation of whether Brennan was insane at the time of the offense.

In the fall of 2018, Dr. Samantha E. DiMisa, a forensic psychologist with the Bureau of Prisons, evaluated Brennan's competency to stand trial and his criminal responsibility. Dr. DiMisa's report documented Brennan's long history of alcoholism. Her interviews with Brennan revealed that he began drinking at age 11 and around the time of his arrest at age 58 was consuming as many as 24 cans of beer in a single day. Brennan repeatedly required emergency medical attention as a consequence of his alcoholism, and his attempts at rehabilitation were unsuccessful.

Dr. DiMisa conducted a series of psychological tests to measure Brennan's cognitive functioning. She concluded that Brennan exhibited marked difficulties in cognitive function and memory and that he suffered from low intelligence. Brennan had severe memory deficits that meant he was not aware of several significant events in his life, including a lung cancer diagnosis and a related operation, despite prompting. Brennan also denied any knowledge that he had committed the underlying 2014 sex offense and was despondent when the evaluator informed him of his actions.

Dr. DiMisa concluded that "Mr. Brennan's overall prognosis is poor, particularly if he continues to drink alcohol in the future." Sealed Documents at

6

14 [hereinafter SD]. She noted, "Neurocognitive Disorders tend to be degenerative in nature, [and] thus, it is highly unlikely Mr. Brennan will return to his previous level of functioning." SD at 14. Dr. DiMisa considered it "unlikely medication would significantly improve his functioning." SD at 14. With respect to Brennan's present competency, she opined that "Mr. Brennan does not currently possess a factual and rational understanding of the proceedings against him, does not have the capacity to assist legal counsel in his defense, and cannot adequately make decisions regarding his strategy." SD at 18. Finally, as to Brennan's criminal responsibility, Dr. DiMisa concluded that "Mr. Brennan's Mental Defect impaired his ability to appreciate the wrongfulness of his conduct at the time of his alleged actions." SD at 35.

Following Dr. DiMisa's evaluation, the magistrate judge, to whom the district court referred pretrial matters, reviewed Dr. DiMisa's report and held a hearing on Brennan's competency. The magistrate determined that Brennan was presently not competent to stand trial and concluded that 18 U.S.C. § 4241(d) mandated that he commit Brennan to the custody of the Attorney General in order to determine Brennan's future competency to stand trial. The magistrate judge ordered Brennan committed to the custody of the Attorney General "for

7

such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit the proceedings to go forward." App'x at 100. Brennan appealed the magistrate's order to the district court, which affirmed the order, concluding that while "the evidence in this case does suggest a relatively low probability that Defendant can be restored to competency," the court was nonetheless compelled under 18 U.S.C. § 4241(d) to commit Brennan to the custody of the Attorney General. *United States v. Brennan*, 354 F. Supp. 3d 250, 260-61 (W.D.N.Y. 2019). The district court did "not find it appropriate to set a firm outer limit on the length of the commitment . . . before the relevant medical personnel ha[d] even had the chance to examine Defendant," but, acknowledging Brennan's due process concerns, "order[ed] that the [Bureau of Prisons] provide a report regarding Defendant's prognosis within 45 days of his hospitalization." *Id.* at 262.

## DISCUSSION

### I.   Due Process in Commitment Proceedings

Brennan challenges his commitment under 18 U.S.C. § 4241(d) on due process grounds, and we therefore consider how the government's interests must

be balanced with Brennan's interests in commitment proceedings. This Court has previously noted that Section 4241(d) serves the government's interest in bringing an accused to trial, which is "fundamental to a scheme of ordered liberty and prerequisite to social justice and peace." *United States v. Magassouba*, 544 F.3d 387, 402-03 (2d Cir. 2008) (internal quotation marks omitted); *see also Sell v. United States*, 539 U.S. 166, 180 (2003). In order to vindicate this interest by prosecuting competent accused persons, the government has a concomitant interest in securing an accurate determination of criminal defendants' mental capacities. *See Magassouba*, 544 F.3d at 408 (discussing need for thorough evaluation period to determine competency). These governmental interests must be balanced with a defendant's fundamental liberty interest in freedom from restraint. *See, e.g., Jones v. United States*, 463 U.S. 354, 361 (1983) ("It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." (internal quotation marks omitted)). That interest is compromised if a defendant is kept in custody to await trial when there is not "a substantial probability that he will attain . . . capacity in the foreseeable future." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

9

In *Jackson v. Indiana*, the Supreme Court articulated the proper balance of the aforementioned interests when it considered an Indiana statute that permitted the state to detain incompetent criminal defendants indefinitely. *Id*. at 731-39. The Supreme Court noted that a court primarily orders commitment for one of three purposes: limiting a defendant's "dangerousness to self," limiting a defendant's "dangerousness to others, and the need for care or treatment or training" to aid the defendant in attaining competency. *Id.* at 737. Due process, the Court held, "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Id.* at 738. Therefore, if the government has detained a defendant "solely on account of his incapacity to proceed to trial," the government cannot hold the defendant for "more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id*. When a defendant "is committed solely on account of his incapacity to proceed to trial," his "continued commitment must be justified by progress toward th[e] goal" of restoring his competency to stand trial. *Id.* The Supreme Court's decision in *Jackson* therefore mandates that where, as here, an incompetent criminal defendant is held in custody for the purpose of

10

determining if he will regain competency in the foreseeable future, the defendant's commitment must at all times reasonably relate to evaluating his ability to regain competency or to restoring him to competency through treatment.

## II.    18 U.S.C. § 4241

Congress enacted Section 4241, the provision under which the district court committed Brennan to the Attorney General's custody, in response to the "due process concerns identified in *Jackson v. Indiana*." *Magassouba*, 544 F.3d at 403. The statute requires the district court to make an initial determination of the defendant's present capacity to stand trial: "[i]f, after [a] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent . . . the court shall commit the defendant to the custody of the Attorney General." 18 U.S.C. § 4241(d). Notable here, the statute calls for the district court to determine present competency and mandates commitment for further assessment if the defendant is presently incompetent. *Id.* The Attorney General is then required to hospitalize the defendant for treatment in a "suitable" facility "for such a reasonable period of time, not to exceed four months, as is necessary to

11

determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *Id.* § 4241(d)(1). As the Ninth Circuit and others have noted, "the overarching purpose of commitment under § 4241(d) is to enable medical professionals to accurately determine whether a criminal defendant is restorable to mental competency." *United States v. Strong*, 489 F.3d 1055, 1062 (9th Cir. 2007); *see also, e.g., United States v. Ferro*, 321 F.3d 756, 762 (8th Cir. 2003).

If, during or after the evaluation and treatment period, the director of the treatment facility at which the defendant resides determines that the defendant has attained competency, the director files a certificate with the court so stating, and the court holds a competency hearing to determine whether the defendant, by a preponderance of the evidence, is competent to stand trial. 18 U.S.C. § 4241(e). Section 4241(e), like Section 4241(d), requires the district court to determine the defendant's competency. *Id.* If "it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248." *Id.* § 4241(d). Under Section 4246, if the director of the treatment facility determines that the defendant "would create a substantial risk of bodily injury to

12

another person or serious damage to property of another," the district court must hold a hearing to determine whether the defendant is dangerous. *Id.* § 4246. If, after the hearing, the district court finds by clear and convincing evidence that the defendant is dangerous, the district court commits him to the custody of the Attorney General. *Id.* § 4246(d). The Attorney General then must attempt to release the defendant to the custody of the state in which he is domiciled for commitment; if the state refuses custody, the Attorney General hospitalizes the defendant in a suitable facility until either the state agrees to assume responsibility for him or his mental condition improves such that he no longer poses a danger or such that he can continue with a medical, psychiatric, or psychological regimen that renders him not dangerous. *Id.* Section 4248 is similar but applies when the director of the facility determines the defendant is "a sexually dangerous person." *Id.* § 4248.

## III. The Constitutionality of Section 4241(d) As Applied to Brennan

Brennan argues that, because commitment of an incompetent criminal accused must reasonably relate to determining whether the defendant will regain competency, Section 4241(d) cannot constitutionally apply to defendants who suffer from conditions that medical professionals opine are highly unlikely to

improve, as Brennan purportedly does. The government responds that Brennan's commitment under Section 4241(d) is intended to allow medical professionals to evaluate the permanency of Brennan's mental condition and is therefore constitutional. For the reasons that follow, we conclude that, because the district court determined that Brennan was presently incompetent, Brennan's commitment was constitutional and statutorily mandated. We further conclude that the medical professional who evaluated Brennan did not definitively conclude that Brennan is highly unlikely to improve and thus highly unlikely to be able to stand trial, and his as-applied challenge on those grounds is not ripe.

We start from the premise that a defendant's competency is a legal question that is properly reserved for the courts. The two-prong test for competency asks "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotation marks omitted). In applying this test, the district court must weigh evidence and apply evidentiary standards. *See United States v. Nichols*, 56 F.3d 403, 410-11 (2d

Cir. 1995).[1] An arbiter must therefore interpret legal competency standards and apply them to the facts before her, a quintessentially judicial task. A medical professional cannot appropriately resolve such legal questions, and a defendant's competence is decidedly the province of the courts.

Section 4241 codifies this principle by committing all competency determinations to the district court. Specifically, the statute requires the district court to determine whether (1) "there is reasonable cause to believe that the defendant" may be incompetent, 18 U.S.C. § 4241(a); (2) "by a preponderance of the evidence . . . the defendant is presently" competent to stand trial, *id.* § 4241(d); and (3) by a preponderance of the evidence the defendant has been restored to competency, *id.* § 4241(e). *See also Magassouba*, 544 F.3d at 406 ("[I]n the event *the court determines* that the defendant has not so improved, he is referred for possible civil commitment proceedings . . . ." (emphasis added)); *United States v. Donofrio*, 896 F.2d 1301, 1303 (11th Cir. 1990) ("The permanency of

---

[1] Indeed, "the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment" in applying the two-prong test for competency. *Nichols*, 56 F.3d at 411.

the condition [of incompetency] would then be determined for later consideration *by the court*." (emphasis added)).

Therefore, before Brennan can be considered permanently incompetent, a *court* must determine "whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the [criminal] proceedings to go forward" following a mandatory commitment as outlined in 18 U.S.C. § 4241(d). 18 U.S.C. § 4241(d)(1). Neither the magistrate judge nor the district court made such a finding with respect to Brennan. *See, e.g.*, *Brennan*, 354 F. Supp. 3d at 260 ("While the evidence in this case does suggest a relatively low probability that Defendant can be restored to competency, the commitment required by § 4241(d) is meant to provide a definitive answer to that question."); App'x at 92 (magistrate judge denying motion to release Brennan that was premised on the grounds that he was permanently incompetent and instead committing Brennan to the Attorney General's custody "for treatment in a suitable facility"). Legally, the district court made no determination as to future competency, and 18 U.S.C. § 4241(d) required the district court to first commit Brennan for evaluation and treatment before making such a determination.

16

We recognize that 18 U.S.C. § 4241(d) does not authorize the district court to determine whether evaluation and treatment of a defendant are necessary in aid of its determination of whether the defendant does not have a substantial likelihood of regaining competency in the foreseeable future. The statute commands that if "the court finds by a preponderance of the evidence that the defendant is presently" incompetent, "the court *shall* commit the defendant to the custody of the Attorney General" for treatment and evaluation. 18 U.S.C. § 4241(d) (emphasis added); *Magassouba*, 544 F.3d at 393 ("If the district court makes a preliminary finding of incompetence, the second step of the statutory scheme . . . mandates the defendant's custodial hospitalization for evaluation and possible treatment."). Only after the mandatory competency evaluation outlined in Section 4241(d) has taken place may the district court—and the district court alone—determine that "the defendant's mental condition has not so improved as to permit the proceedings to go forward." 18 U.S.C. § 4241(d). In that case, the procedures outlined in Sections 4246 and 4248 are triggered. We conclude that as applied to Brennan, such mandatory, limited commitment comports with the due process principles articulated in *Jackson v. Indiana*. 406 U.S. at 737-38.

17

As an initial matter, the district court's limited order for Brennan's examination requested medical findings on "the defendant's history and *present* symptoms, if any . . . and . . . as to diagnosis." App'x at 54-56 (emphasis added). The district court did not request that the medical examiner, Dr. DiMisa, make any findings regarding Brennan's likelihood of improving and ultimately standing trial. Thus, while Dr. DiMisa's reports paint an undoubtedly bleak picture of Brennan's health, the section of her competency report titled "PROGNOSIS" is predictably devoid of definitive statements regarding Brennan's ability to improve and ultimately stand trial. SD at 14-15. Instead, Dr. DiMisa's prognostic opinions in every instance are conditional. *See* SD at 14 ("Mr. Brennan's overall prognosis is poor, *particularly if* he continues to drink alcohol in the future." (emphasis added)); SD at 14 ("Neurocognitive Disorders *tend* to be degenerative in nature, thus, it is highly unlikely Mr. Brennan will return to his previous level of functioning." (emphasis added)); SD at 14 ("It is also *unlikely* medication would *significantly* improve his functioning." (emphasis added)).

The limited scope of Dr. DiMisa's reports is indicative of the need for a more thorough evaluation. As several of our sister circuits have noted, the evaluation of a defendant's future competency "requires a more careful and

18

accurate diagnosis than the brief interviews and review of medical records that tend to characterize the initial competency proceeding." *Strong*, 489 F.3d at 1062 (internal quotation marks omitted) (citing *Ferro*, 321 F.3d at 762; *United States v. Filippi*, 211 F.3d 649, 651 (1st Cir. 2000)); *see also Donofrio*, 896 F.2d at 1303 (describing evaluation period as permitting "a careful determination of the likelihood of regaining mental capacity to stand trial").[2]

The evidence at Brennan's competency hearing therefore did not call for the district court to determine whether an individual whom medical professionals conclusively considered substantially unlikely to improve could constitutionally be committed under Section 4241(d). Instead, the district court applied Section 4241(d) to a defendant whose medical prognosis was not definitive and whose future competency was legally unsettled. As such,

---

[2] This is necessarily true because the initial psychiatric evaluation is limited. Section 4241(b) requires that the preliminary examination of the defendant be conducted "pursuant to the provisions of section 4247 (b) and (c)." 18 U.S.C. § 4241(b). Section 4247(b) in turn requires that the examination period be limited to "a reasonable period, but not to exceed thirty days." *Id.* § 4247(b). The director of the facility to which the defendant is committed "may apply for a reasonable extension, but not to exceed fifteen days." *Id.* Thus, although Dr. DiMisa conducted numerous interviews over several hours, the initial evaluation period was necessarily temporally limited, constraining a medical professional's ability to evaluate and treat a mentally incompetent defendant.

Brennan's commitment under Section 4241(d) will allow for a more thorough evaluation of his ability to regain competency than the preliminary examination allowed, and the statute's mandatory order of commitment "bear[s] some reasonable relation to the purpose for which" Brennan was committed. *Jackson*, 406 U.S. at 738. Moreover, because this commitment period is explicitly limited to a "reasonable period of time" as is "necessary" to determine Brennan's future competency, 18 U.S.C. § 4241(d)(1), the commitment will remain reasonably related to determining Brennan's future competency and must terminate as soon as a determination can be made. *See Filippi*, 211 F.3d at 652 (noting the statute is "flexible and case-oriented in determining the length of incarceration"). The statute thereby balances the government's interest in accurately determining Brennan's competency with Brennan's liberty interest and is consistent with due process.

We hold that Section 4241(d) is constitutional as the district court applied it to Brennan because Brennan's continued detention is reasonably related to resolving open questions regarding the likelihood that Brennan will regain competency to stand trial in the foreseeable future.

**CONCLUSION**

We AFFIRM the district court's order pursuant to Section 4241(d) committing Brennan to the custody of the Attorney General.