# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2805

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Louie A. Ferro, Sr., | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 16, 2003

Filed: March 11, 2003

_____

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
WEBBER,[1] District Judge.

_____

WEBBER, District Judge.

Louie A. Ferro, Sr. was found incompetent to stand trial. Ferro appeals the district court's[2] order committing him to the custody of the Attorney General for

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2] The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

treatment, for a reasonable period of time not to exceed four months, to determine whether there was a substantial probability that in the foreseeable future, he would attain the capacity to stand trial. We affirm.

## I.

On July 14, 1999, a grand jury returned an indictment alleging that Louie A. Ferro, Sr., Louie A. Ferro, Jr., Wilbur Swift, and Kevin D. Staley participated in an unlawful scheme to defraud pharmaceutical sellers. The indictment charged defendants with conspiracy to transport property obtained by fraud across state lines, conspiracy to commit money laundering, transportation of pharmaceutical goods by fraud, use of proceeds obtained by fraud, and mail fraud. Prior to return of the indictment, counsel for Defendant Louie A. Ferro, Sr. ("Ferro") notified the government that Ferro had suffered a stroke in November of 1998; however, at the arraignment on July 27, 1999, counsel indicated that Ferro would not raise the defense of incompetency to stand trial. Nonetheless, in September 1999, Ferro's counsel faxed a neurological report to the government which indicated that Ferro was unable to participate in his defense. On October 12, 1999, the government requested that the district court determine Ferro's mental competency to stand trial.[3]

---

[3] The government's request was made pursuant to 18 U.S.C. § 4241(a). The statute provides:

(a) Motion to determine competency of defendant. – At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of

The district court ordered a psychiatric or psychological examination to determine Ferro's competency to stand trial.[4]  Stanton L. Rosenberg, M.D., retained by the government, conducted the examination in December 1999.  The examination consisted of two one-hour interviews with Ferro.  Dr. Rosenberg also held a one-hour meeting with Ferro's counsel and a one-hour and ten-minute interview with counsel for the government.  In addition, Dr. Rosenberg reviewed hospital and out-patient treatment records relating to Ferro's 1998 stroke, a neuropsychological evaluation report from August 1999, and a speech language evaluation conducted in September 1999.  In his report, dated December 20, 1999, Dr. Rosenberg opined that Ferro suffered from a moderate degree of dementia, secondary to his stroke.  Dr. Rosenberg concluded that Ferro was not competent to stand trial and that "prognosis for further improvement is probably extremely poor."

Dr. Rosenberg's report was submitted to the district court, and the government requested a hearing to determine competency under 18 U.S.C. § 4241(c).  Prior to scheduling the hearing, however, the district court dismissed the indictment for failure to state an offense.  On appeal by the government, the judgment of the district court dismissing the indictment was reversed, and the case was remanded for further proceedings.  See United States v. Ferro, 252 F.3d 964 (8th Cir. 2001), cert. denied, 534 U.S. 1083 (2002).

---

the proceedings against him or to assist properly in his defense.

 18 U.S.C. § 4241(a).

 [4] A psychiatric or psychological examination may be ordered by the district court pursuant to 18 U.S.C. § 4241(b), which provides that "[p]rior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c)."

After remand, the district court held a status conference on January 25, 2002, during which counsel for Ferro represented that Ferro's condition had deteriorated since the 1999 examination. Dr. Rosenberg conducted a follow-up examination in February 2002 and concluded that Ferro's "mental status has deteriorated significantly." Dr. Rosenberg concluded that Ferro suffered from chronic cerebrovascular disease, that the disease was not curable, and that the dementia would be progressive. Again, Dr. Rosenberg concluded that Ferro was not competent to stand trial. Moreover, Ferro's treating physician, Roman Enriquez, M.D., reviewed an MRI, which, in his opinion, demonstrated extensive hemispheric white matter abnormalities and cerebellar infarcts. Dr. Enriquez diagnosed Ferro with vascular dementia, a progressive disease.

The district court concluded that Ferro was incompetent to stand trial. In accordance with the provisions of 18 U.S.C. § 4241(d), the district court issued an order on June 21, 2002, adopting a report and recommendation of the magistrate judge.[5] The district court committed Ferro to the custody of the Attorney General for a reasonable period of time, not to exceed four months, to determine whether there was a substantial probability that in the foreseeable future Ferro would attain the capacity to permit the trial to proceed. Ferro appeals the district court's order committing him to the custody of the Attorney General. Ferro argues that 18 U.S.C. § 4241(d) only provides for involuntary hospitalization if the defendant has a treatable condition. Therefore, Ferro asseverates that the district court erred in committing him to the custody of the Attorney General because the undisputed medical evidence indicated that his condition was chronic, progressive, and untreatable. While Ferro concedes that the district court's order committing him to the Attorney General's custody was not a final order, he asserts that jurisdiction to

_____

[5] The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

hear his appeal exists based upon the "collateral order doctrine." This Court granted Ferro's request for a stay of the district court order committing him to the custody of the Attorney General on July 12, 2002, to permit an appeal of the district court order.

## II.

Ferro contends that the order of the district court committing him to the custody of the Attorney General is immediately appealable under the collateral order exception to the final judgment rule. The government does not contest appealability of the district court's order but notes that its concession cannot confer jurisdiction.

The Court of Appeals only has jurisdiction of appeals from "final decisions." 28 U.S.C. § 1291. Thus, appellate jurisdiction in criminal cases ordinarily exists only after conviction and sentencing. Under the collateral order exception, however, appellate review is allowed in a criminal case in limited situations where a trial court order conclusively determines a disputed question that is completely separate from the merits of the action. United States v. Ivory, 29 F.3d 1307, 1311 (8th Cir. 1994) (citing Flanagan v. United States, 465 U.S. 259 (1984)); Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545-46 (1949) (first recognizing the exception). The exception is available only where a right would effectively be lost if not addressed before trial, and it is applied "with the utmost strictness." Flanagan, 465 U.S. at 265.

In the criminal context, the United States Supreme Court has recognized the applicability of the collateral order exception under three circumstances: (1) orders denying motions to reduce bail, (2) orders denying motions to dismiss an indictment on double jeopardy grounds, and (3) orders denying motions to dismiss an indictment on speech and debate grounds. Id. at 266, cited in Ivory, 29 F.3d at 1311 (refusing to apply the exception to an order denying a motion for trial sanctions). The collateral order exception has been extended to district court orders committing a defendant to the Attorney General's custody under § 4241(d) by several other circuits.

See United States v. Filippi, 211 F.3d 649, 650-51 (1st Cir. 2000); United States v. Boigegrain, 122 F.3d 1345, 1348-49 (10th Cir. 1997) (noting that the majority of circuits[6] have concluded that the collateral order doctrine is applicable); United States v. Davis, 93 F.3d 1286, 1289 (6th Cir. 1996) (stating that "[a]n order of commitment for psychiatric examination easily satisfies the requirements of the collateral order doctrine"); United States v. Donofrio, 896 F.2d 1301, 1303 (11th Cir. 1990); United States v. Gold, 790 F.2d 235, 238-39 (2d Cir. 1986). In this case, the district court conclusively determined in its order that Ferro was incompetent to stand trial and should be committed to the Attorney General's custody for treatment. Ferro's competence to stand trial is an issue completely separate from the merits of the criminal charges against him. If not allowed to appeal the order at this time, his liberty right to avoid involuntary hospitalization will be lost. Thus, all of the elements of the collateral order exception have been met, and we conclude that jurisdiction to hear Ferro's appeal is proper.

III.

A three-part scheme for determining mental competency to stand trial exists under 18 U.S.C. § 4241. A district court must first determine, by a preponderance of the evidence, whether the defendant suffers from a "mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a), (d). If the district court concludes that the defendant

---

[6] In Boigegrain, the Tenth Circuit agreed with the majority approach, overruling its prior decision in United States v. Cheama, 730 F.2d 1383 (10th Cir. 1984). The Ninth Circuit had adopted the Cheama reasoning in United States v. Ohnick, 803 F.2d 1485 (9th Cir. 1986). However, the Boigegrain court noted that Ohnick and Cheama considered an older version of the statutory scheme, and the Tenth Circuit believed, upon further consideration, that the "majority rule is the better-reasoned approach." Boigegrain, 122 F.3d at 1348, n.3.

lacks sufficient mental competency to proceed to trial, "the court shall commit the defendant to the custody of the Attorney General" and the "Attorney General shall hospitalize the defendant for treatment . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed . . . ." 18 U.S.C. § 4241(d), (d)(1). Finally, if it becomes apparent that the defendant will not attain sufficient capacity to proceed to trial, a "dangerousness hearing" is conducted in accordance with the provisions of 18 U.S.C. § 4246 to determine if the defendant would pose a "substantial risk of bodily injury to another person or serious damage to property of another" upon release. See id. (referring to 18 U.S.C. § 4246(a)).

Ferro argues that § 4241(d) is ambiguous and that a proper reading of the statute does not authorize commitment to the Attorney General's custody unless the defendant's condition is treatable. Ferro avers that the word "shall" is conditioned by the words "as is necessary," thereby mandating involuntary hospitalization only for individuals subject to improvement through treatment. Because Ferro's condition was deemed untreatable by Dr. Rosenberg and Dr. Enriquez and because there was no evidence to the contrary, Ferro concludes that involuntary hospitalization is improper under the statute.

It is clear that the statutory scheme detailed by Congress in § 4241(d) provides the district court with the discretion to initially determine whether the defendant is competent to stand trial. It is also clear from the plain language of the statute, however, that the district court does not have the discretion, prior to a reasonable period of hospitalization in the custody of the Attorney General, to determine whether the defendant will likely attain the capacity to stand trial. Rather, § 4241(d) provides that the Attorney General "shall hospitalize the defendant . . . as is necessary" to determine whether the defendant's condition will improve. Ferro's argument simply is not supported by the language of the statute.

-7-

Moreover, several other circuits have considered whether § 4241(d) requires commitment to the Attorney General upon an initial finding of incompetency, and in all cases, the courts have concluded that the statute is mandatory. See United States v. Filippi, 211 F.3d 649, 651 (1st Cir. 2000) (stating that the statute establishes a general rule of commitment without a "case-by-case choice by the district court as to whether to incarcerate once the incompetency finding has been made"); United States v. Donofrio, 896 F.2d 1301, 1302 (11th Cir. 1990) (holding that the statute is "mandatory"); United States v. Shawar, 865 F.2d 856, 860 (7th Cir. 1989) (concluding that Congress intended mandatory commitment to the Attorney General). These courts have additionally concluded that the permanency of the defendant's condition is not before the district court. See, e.g., Shawar, 865 F.2d at 861. Finding these cases persuasive and upon our own reading of the statute, we conclude that after determining that a defendant is incompetent to stand trial, a district court is required to commit the defendant to the custody of the Attorney General for a reasonable period of time to evaluate whether treatment would allow the trial to proceed.

IV.

Ferro argues that committing him for treatment leads to an absurd and harmful result because the examining doctors concluded that there is no current medical procedure capable of improving Ferro's higher cognitive functioning. He asserts that he is better off near his family and under the care of his own doctors and that commitment will further complicate his condition and cause him harm. Ferro's arguments appear to misapprehend the full extent of "treatment" as that term is used in the statutory scheme.

We believe that the concept of treatment encompasses more than mere improvement. In United States v. Donofrio, the Eleventh Circuit concluded that "treatment," as contemplated in § 4241(d), includes "hospitalization for a careful determination of the likelihood of regaining mental capacity to stand trial." Donofrio,

-8-

896 F.2d at 1303. Likewise, the First Circuit stated in United States v. Filippi that even where the evidence before the district court indicated that the defendant's condition was irreversible, Congress intended further hospitalization – i.e., treatment – to "permit a more careful and accurate diagnosis before the court is faced with the serious decision whether to defer trial indefinitely and (quite often) to release the defendant back into society." Filippi, 211 F.3d at 651. The limited time period of hospitalization minimizes potential harm to the defendant and comports with due process. Id. at 652 (finding the statute constitutional because it is "flexible and case-oriented in determining the length of incarceration").

The district court concluded that Ferro was unable to proceed to trial and assist in his defense based upon the reports of two medical doctors. The reports were made after brief interviews with Ferro and a review of medical records, including an MRI. While Ferro argues that his circumstances differ from the circumstances in the cases cited above due to the conclusive MRI results, we do not believe that further investigation into Ferro's condition is "absurd." To be sure, the miracles of science suggest that few conditions are truly without the possibility of improvement. Therefore, even where the medical reports presented to the district court showed by a preponderance of the evidence that the condition was permanent, the statutory scheme appropriately affords additional time during which the Attorney General may explore medical options.

Finally, as set forth by Congress, § 4241 and § 4246, read together, entitle the government to a dangerousness hearing before a defendant is released due to incompetency to stand trial. The government is entitled to show that the defendant poses a risk of harm to others or damage to property and that the defendant should remain in custody even though there is no potential of attaining the capacity to stand trial. "The dangerousness issue only arises under the statute when the defendant already has been committed under § 4241 . . . ." Shawar, 865 F.2d at 862. Ferro's suggestion that he would benefit from remaining at home and under the care of his

own doctors, in effect, short-circuits the statutory scheme by allowing the district court to make an initial determination that the defendant's condition will not improve without triggering the need for a dangerousness hearing. For this additional reason, Ferro's arguments must be rejected.

The order of the district court committing Louie A. Ferro, Sr. to the custody of the Attorney General is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-