NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>*. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | | |
|---|---|---|
| R.B., | | Court of Appeals No. A-13803 |
| Petitioner, | | Trial Court No. 4FA-18-01059 CR |
| v. | | |
| STATE OF ALASKA, | | O P I N I O N |
| Respondent. | | No. 2751 — June 30, 2023 |

Petition for Review from the Superior Court, Fourth Judicial District, Fairbanks, Michael P. McConahy, Judge.

Appearances: Eric D. Yff, Assistant Public Defender, Fairbanks, and Samantha Cherot, Public Defender, Anchorage, for the Petitioner. Nancy R. Simel, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Respondent.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge HARBISON.

This case involves a challenge to the constitutionality of the provision of Alaska law governing the procedure that must be followed after a criminal defendant

charged with a felony is found to be legally incompetent.[1] The defendant in this case, R.B., contends that AS 12.47.110(a) is unconstitutional because it mandates the commitment of all incompetent felony defendants regardless of their prospects for regaining competency.

R.B. was charged with felony assault and several other offenses. He filed a motion for judicial determination of competency, which the court granted. A forensic psychologist determined that R.B. had a history of traumatic brain injuries and schizoaffective disorder and concluded that as a result, R.B. was incompetent to stand trial. The psychologist also determined, "to a reasonable degree of psychological certainty," that R.B. could not be restored to competency.

After conducting a competency hearing, the superior court found that R.B. was not competent to stand trial, but the court declined R.B.'s request to find that he was unlikely to be restored to competency within the foreseeable future. Instead, the court entered an order committing R.B. to the Alaska Psychiatric Institute (API), "for a period not to exceed 90 days . . . until [he] is rendered mentally competent to stand trial; or [the] pending charges in this matter are disposed of according to law."[2]

---

[1] Under AS 12.47.100(a), criminal defendants who are unable to understand the proceedings against them or unable to assist in their own defense are deemed incompetent and cannot be tried, convicted, or sentenced while the incompetency remains.

[2] The superior court's order explained that API is the authorized representative of the Commissioner of Health and Social Services. We note that in July 2022, after the court's order was entered, the governor restructured the Department of Health and Social Services, dividing it into two separate departments. The Alaska Psychiatric Institute was included within the newly created Department of Family and Community Services (DFCS) while the Division of Behavioral Health was included in the newly-created Department of Health. Alaska Statute 12.47.110(a) was then amended to reflect that an incompetent defendant would be committed to the custody of the Commissioner of Family and Community Services, rather than to the custody of the Commissioner of Health and Social Services. *See* Executive Order No. 121, § 137 (July 1, 2022).

R.B. petitioned this Court for review, arguing that the superior court's order violated his state and federal right to substantive due process by requiring his commitment in the absence of a good reason to believe he can be restored to competency. We granted his petition.

For the reasons explained in this opinion, we conclude that the superior court correctly resolved this issue: under AS 12.47.110, the court must commit an incompetent felony defendant to the custody of the Commissioner of Family and Community Services for further evaluation and treatment and, except in rare cases not presented here, is not required to rule on restorability prior to the defendant's initial commitment.[3] We also conclude that this statute does not violate R.B.'s due process rights under either the United States or the Alaska constitution.

However, the parties' briefs bring to light a related problem with the superior court's commitment order. While the order requires API to promptly notify the court if it determines that R.B. has become competent so that "an expedited hearing pursuant to AS 12.47.100 can be scheduled," it does not require API to provide similar notice if it determines, to a reasonable degree of psychological certainty, that R.B. cannot be restored to competency. Such a determination could provide a basis for the superior court to conduct an evidentiary hearing prior to the expiration of the period of commitment and, if R.B. is not restorable, to dismiss the charges against him. We accordingly remand this matter to the superior court with instructions to amend its commitment order to require API to promptly notify the court if it determines to a reasonable degree of certainty that R.B. cannot be restored to competency within the maximum period of commitment.

---

[3]     The term "restorable" is often used by courts to refer to a likelihood that the defendant will attain competency in the foreseeable future. *See, e.g.*, *Powell v. Md. Dep't of Health*, 168 A.3d 857, 874 (Md. App. 2017) ("If the defendant is not restorable — *i.e.*, not likely to become competent within the foreseeable future — the government must either release the defendant or institute civil commitment proceedings.").

*Background facts and proceedings, and an overview of the pertinent statutes*

R.B. was charged with second-degree assault, fourth-degree assault, resisting arrest, reckless endangerment, second-degree criminal trespass, and disorderly conduct.[4] The charges were based on an incident that allegedly occurred when R.B. was having dinner in a restaurant with his father. Police officers were dispatched to the restaurant to investigate a report that R.B. had engaged in threatening behavior and refused to leave the restaurant. According to the charging documents, R.B. resisted arrest, punched one of the officers in the forehead, and fought with a second officer, causing him to suffer a knee injury, a concussion, and memory loss.

After his arrest, R.B. posted bail and was released to his father's care. R.B.'s defense attorney eventually moved for a competency evaluation pursuant to AS 12.47.100(b).

Under AS 12.47.100(b), if either the prosecutor or the defense attorney has reasonable cause to believe that the defendant may be incompetent, they may file a motion for a judicial determination of the defendant's competency. This statute requires that, upon such a motion (or upon the court's own motion), the defendant must be examined by at least one qualified psychiatrist or psychologist, who then reports to the court on the defendant's competency. If the court determines that the defendant is incompetent on either or both of the grounds set out by AS 12.47.100(a), the court must stay the criminal proceedings.[5] Additionally, if the defendant is charged with a felony, AS 12.47.110(a) requires the court to commit the defendant to the custody of the

---

[4]  AS 11.41.210(a)(2), AS 11.41.230(a)(1), AS 11.56.700(a)(3), AS 11.41.250(a), AS 11.46.330(a)(1), and AS 11.61.110(a)(5), respectively.

[5]  AS 12.47.110(a).

Commissioner of Family and Community Services for further evaluation and treatment.[6] This initial commitment may not exceed ninety days.[7]

If, after the initial commitment, the superior court finds by a preponderance of the evidence that the defendant remains incompetent to stand trial, AS 12.47.110(b) authorizes the court to order a second commitment of no more than ninety days. At the expiration of the second period of commitment, if the defendant remains incompetent, the court ordinarily must dismiss the charges against the defendant, and the defendant's continued commitment is governed by the statutes relating to civil commitments.[8]

In the present matter, the superior court granted the defense attorney's motion for a competency evaluation, and R.B. was interviewed via live videoconferencing by Dr. Gregory Lobb, a licensed forensic psychologist under contract with API. Lobb also reviewed a large number of documents and briefly interviewed R.B.'s father. Lobb then prepared a report opining that R.B. suffered from schizoaffective disorder and mild neurocognitive disorder due to traumatic brain injury. In his report, Lobb explained that it was unlikely that any additional treatment would provide a change in R.B.'s understanding of the legal system or his ability to assist in his defense, and he thus concluded, to "a reasonable degree of psychological certainty," that R.B. was "not restorable."

---

[6] This commitment is discretionary for defendants charged only with misdemeanors.

[7] AS 12.47.110(a).

[8] There is an exception under AS 12.47.110(b) for defendants charged with crimes involving force against a person, when the defendant presents a substantial danger to other persons. But even under this exception, the defendant's continued commitment may only be ordered if the superior court finds that there is a substantial probability that the defendant will regain competency within a reasonable period of time, and then only for an additional period of up to six months. After that, the charges must be dismissed.

After receiving Lobb's report, R.B.'s attorney filed a motion to dismiss the charges, arguing that R.B. could not be restored to competency and noting that there was a months-long waitlist for admission to API. (API is a locked, inpatient facility and is the only facility in Alaska that currently provides competency restoration treatment.[9] Unlike other states, Alaska does not have a facility that conducts outpatient competency restoration.[10]) In the motion to dismiss, the defense attorney asserted that an order requiring R.B. to be committed under AS 12.47.110 would violate R.B.'s right to substantive due process because a psychologist had already determined that R.B. was not restorable.

The State opposed R.B.'s motion to dismiss, and the superior court scheduled a competency hearing, deferring ruling on the motion to dismiss until after it had adjudicated the question of R.B.'s competency.

At the competency hearing, Lobb was qualified as an expert to offer his professional opinion of R.B.'s competency. He provided testimony that was consistent with his report — *i.e.*, that R.B. was not competent and could not be restored to competency. Lobb noted that R.B. had been living with his father, W.B., since his release from custody and might decompensate if he were taken out of his father's care.

W.B. also testified at the hearing. W.B. testified that R.B. had suffered dramatic changes in mood after sustaining traumatic brain injuries and that it took several years to determine the best combination of medications to treat R.B.'s symptoms. According to W.B., R.B. had not been taking the "right" medications when the incident occurred, but since that time, R.B. had been doing much better. W.B. explained that R.B. did not respond well to changes in his environment and expressed

[9]  *See J.K. v. State*, 469 P.3d 434, 441 (Alaska App. 2020); *In re Naomi B.*, 435 P.3d 918, 934 (Alaska 2019).

[10]  *J.K.*, 469 P.3d at 441.

concern that R.B.'s behavior and mental state might worsen if he were sent to jail or API.

At the hearing, the parties stipulated that the waiting time for admission to API was approximately 120 days and that an incompetent out-of-custody defendant could be admitted to API for further evaluation and treatment without having to be jailed first.

After considering the parties' arguments, the superior court found that R.B. had established by a preponderance of the evidence that he was incompetent. However, the superior court declined to enter a finding on whether R.B. was restorable, instead committing him to API for up to ninety days. The court's order allowed R.B. to report directly to API for admission so that he could remain out of custody in his father's care while waiting for a bed at API to become available.

R.B. then petitioned this Court for review of the superior court's order, and we granted the petition.

*Why we conclude that this Court's existing precedent does not establish that it is unconstitutional to commit incompetent defendants without first determining that they are restorable*

R.B. contends that AS 12.47.110(a) is unconstitutional because it mandates the commitment of all incompetent felony defendants regardless of their prospects for regaining competency. According to R.B., in order to pass constitutional muster, a commitment statute must allow the superior court to adjudicate the question of restorability before committing a defendant for further evaluation or treatment — so that if the court determines that the defendant cannot be restored to competency within the maximum period of commitment authorized by statute, the court may decline to commit the defendant and instead may dismiss the case. As support for this contention,

R.B. relies in large part on *J.K. v. State* — which is this Court's only case discussing the United States Supreme Court's opinion in *Jackson v. Indiana.*[11]

In *Jackson*, the United States Supreme Court held that, as a matter of federal due process, a defendant "who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future."[12] The defendant in that case had been found to be incompetent because he was deaf and could not speak, read, write, "or otherwise communicate except through limited sign language."[13] The Indiana court committed him, as required by state statute, until such time as the superintendent of the state psychiatric hospital could certify that he was "sane."

The state statute at issue in *Jackson* had two salient features. First, it was mandatory in nature, meaning that courts were required to commit defendants upon a finding of incompetence. Second, it conditioned the end of the commitment on the defendant regaining "sanity." Because of this, the duration of a defendant's commitment was indefinite and could theoretically result in a lifetime of confinement, even for defendants — like Jackson — who had little prospect of regaining competence.[14]

---

[11] *Id.* at 434; *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

[12] *Jackson*, 406 U.S. at 738.

[13] *Id.* at 717.

[14] *See id.* at 717 n.1 (citing Ind. Code § 35-5-3-2 (1971)) ("If the court shall find that the defendant has not comprehension sufficient to understand the proceedings and make his defense, the court shall order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution. *Whenever the defendant shall become sane* the superintendent of the state psychiatric hospital shall certify the fact to the proper court, who shall enter an order on his record directing the sheriff to return the defendant, or the court may enter such order in the first instance

Jackson appealed, contending that this commitment statute was unconstitutional. The Supreme Court held that "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed," and thus agreed with Jackson that the indefinite commitment of a criminal defendant solely on account of the defendant's incompetency to stand trial was unconstitutional.[15]

This Court relied in part on *Jackson* when we considered, in *J.K. v. State*, whether a lengthy delay in transferring an incompetent defendant to API for restoration treatment violated the defendant's right to substantive due process.[16] In *J.K.*, the defendant had been charged with a misdemeanor, found to be incompetent, and committed to the custody of the Commissioner of Health and Social Services for an initial ninety-day restoration period. Because J.K. was not released on bail, he remained incarcerated for over 100 days, waiting to be transferred to API.[17]

J.K. petitioned for review, and this Court granted the petition. We held that the lengthy delay in transferring J.K. to API violated J.K.'s right to substantive due process. In reaching this conclusion, we relied on *Jackson*'s admonition that the nature and duration of a defendant's commitment must "bear some reasonable relation to the purpose for which the defendant is committed," and that a defendant's continued commitment after a finding of incompetency "must be justified by progress toward that goal."[18] We thus held that "a defendant who has been found incompetent and committed

---

whenever he shall be sufficiently advised of the defendant's restoration to sanity." (emphasis added)).

[15] *Id.* at 738.

[16] *J.K.*, 469 P.3d at 440-41, 444-45.

[17] *Id.* at 444 & n.51.

[18] *Id.* at 440-41 (quoting *Jackson*, 406 U.S. at 738).

to competency restoration treatment cannot languish in jail without access to the treatment," and we concluded that the delay that occurred in J.K.'s case went "far beyond any constitutional boundary."[19]

In *J.K.*, we noted *Jackson*'s holding that, as a matter of substantive due process, an incompetent defendant may not be held "more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future."[20] We then described this as equivalent to permitting commitment for competency restoration treatment "only when there is good reason to believe that the treatment is likely to restore the defendant to competency in the near future."[21]

R.B. relies heavily on this description of the *Jackson* holding to argue that, before a defendant can be committed to API under AS 12.47.110(a), a court must affirmatively find "good reason" to believe that the defendant is restorable. But this is a misreading of what was obviously intended to be a recapitulation of the holding in *Jackson*. To the extent that our language in *J.K.* could be read to suggest that an *affirmative* judicial finding of restorability is required in all cases before commitment for further evaluation and treatment can be ordered, we reject that interpretation.

We also note that, although both R.B. and J.K. raised due process challenges to a superior court's commitment order, there is little else that their cases have in common. Indeed, the two cases involve challenges to entirely different aspects of a competency commitment. J.K. challenged the lengthy period of time he spent in jail awaiting transfer to API for restoration treatment after the court declined to dismiss

---

[19] *Id.* at 441, 444.

[20] *Id.* at 440 (quoting *Jackson*, 406 U.S. at 738).

[21] *Id.*

his misdemeanor case and instead exercised its discretionary authority to commit him.[22] In contrast, R.B. challenges the mandatory nature of the provision that requires felony defendants to be committed for evaluation and treatment even in the absence of an affirmative finding that the commitment may restore them to competency. In other words, our conclusion in *J.K.* that "a defendant who has been found incompetent and committed to competency restoration treatment cannot languish in jail without access to the treatment" has little bearing on whether mandatory commitment may be required of felony defendants in the absence of a judicial finding of restorability.

Having determined that *J.K.* does not control the outcome of this case, we turn our attention to R.B.'s remaining arguments.

*Why we conclude that the mandatory commitment required by AS 12.47.110 does not violate a defendant's right to substantive due process*

Whether mandatory commitment under AS 12.47.110 violates a defendant's right to substantive due process is a question of first impression in Alaska. To answer this question, we consider the United States Supreme Court's decision in *Jackson*, the purpose of commitment under AS 12.47.110, and the decisional law of other courts. Ultimately, we conclude that AS 12.47.110 is consistent with defendants' due process rights under the United States and Alaska constitutions.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution restricts the government's power to prosecute crimes in two relevant respects. First, it prohibits the criminal trial of an incompetent defendant.[23] Second, it recognizes "a substantial liberty interest in avoiding confinement in a mental

---

[22]  *Id.* at 439-40.

[23]  *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996).

hospital."[24] Because a defendant has a "strong interest in liberty," the government must advance a "sufficiently compelling" interest to justify this deprivation.[25]

In *Jackson v. Indiana*, the Supreme Court held that due process requires the nature and duration of a defendant's commitment to "bear some reasonable relation to the purpose for which the individual is committed."[26] We accordingly begin our analysis by determining the purpose for the mandatory commitment of felony defendants under AS 12.47.110(a).

Alaska courts employ a sliding-scale approach to statutory interpretation. Under this approach, the plain language of a statute is significant but does not always control; rather, "legislative history can sometimes alter a statute's literal terms."[27] However, as a general rule, "the plainer the language of the statute, the more convincing contrary legislative history must be."[28]

Alaska Statute 12.47.110(a) provides that, when a trial court determines that a felony defendant is legally incompetent, the court shall commit the defendant "for further evaluation and treatment until the defendant is mentally competent to stand trial . . . but in no event longer than 90 days." This plain language indicates that the purpose of the commitment is twofold: (1) to conduct further evaluation of the defendant's competency, and (2) to provide treatment in order to render the defendant mentally competent to stand trial.

---

[24] *Zinermon v. Burch*, 494 U.S. 113, 131 (1990).

[25] *United States v. Salerno*, 481 U.S. 739, 748, 750 (1987).

[26] *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

[27] *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012) (quoting *Bartley v. State, Dep't of Admin., Teacher's Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005)).

[28] *Id.* (quoting *Bartley*, 110 P.3d at 1258).

In 1981, the Alaska legislature responded to the Supreme Court's decision in *Jackson* by placing a limit on the length of a defendant's confinement after a finding of incompetency.[29] The resulting law did not require commitment for any defendants, but it did state, as does the current statute, that a commitment was for "further evaluation and treatment."[30] Then, in 2008, the legislature amended AS 12.47.110(a) to make the initial commitment of incompetent defendants charged with felonies mandatory.[31] The 2008 legislation also made changes to how civil commitment proceedings are initiated against incompetent defendants and created a rebuttable presumption that would favor the civil commitment of incompetent felony defendants.[32]

R.B. contends that the legislative history of the 2008 changes to AS 12.47.110 indicates that the legislature's intent in enacting these changes was to facilitate the civil commitment of incompetent criminal defendants.

We have reviewed this legislative history, and we agree that the legislature contemplated that some of the changes to AS 12.47.110 would facilitate a subsequent civil commitment of felony defendants who are found incompetent to stand trial.[33] However, we do not agree with R.B.'s claim that this was also the reason that the legislature made the change to AS 12.47.110(a) which mandated the commitment of incompetent defendants charged with felonies. Indeed, in proposing these changes to

---

[29] Former AS 12.45.110(a) (1981); Audio of Senate Health, Educ., and Soc. Services Comm. Meeting, Senate Bill 100, testimony of Assistant Attorney General Barry Stern, 2:57:59 – 3:00:06 p.m. (Feb. 23, 1981) (describing how the bill would update the law to conform with *Jackson*).

[30] Former AS 12.45.110(a) (1981); SLA 1981, ch. 84, § 4.

[31] SLA 2008, ch. 75, § 19 (changing "may" to "shall").

[32] SLA 2008, ch. 75, §§ 20-21.

[33] In particular, the addition of a rebuttable presumption that an incompetent felony defendant is mentally ill and is likely to harm themselves or others was intended to further this goal.

the legislature in 2008, the Governor and representatives from the Attorney General's office repeatedly stated that the amendments were designed to require incompetent defendants to be referred to the Commissioner "for evaluation and treatment."[34]

We conclude that this legislative history demonstrates that the legislature's purpose for committing felony defendants is consistent with the purpose stated in the statute's plain language — *i.e.*, to evaluate the defendant's competency to stand trial and to provide restoration treatment to the defendant with the goal of allowing trial proceedings to resume.

Having determined the purpose for an incompetency commitment under AS 12.47.110(a), we next must determine whether, as required by *Jackson*, the nature and duration of the defendant's commitment has a reasonable relation to this governmental purpose.[35]

*Jackson* involved an Indiana statute that authorized the indefinite confinement of an incompetent defendant without an evaluation of the defendant's dangerousness or ability to be restored to competency through treatment.[36] Because the Indiana statute allowed defendants to be held "more than the reasonable period of time necessary to determine whether there [was] a substantial probability" that they would

---

[34] *See, e.g.*, Governor's Transmittal Letter for House Bill 323, 2008 House Journal 1732-34 (Jan. 17, 2008); Governor's Transmittal Letter for Senate Bill 234, 2008 Senate Journal 1621-23 (Jan. 18, 2008); Audio of Senate Fin. Comm., Senate Bill 234, testimony of Assistant Attorney General Anne Carpeneti, 9:31:30 – 9:31:40 a.m. & 9:33:08 – 9:33:39 a.m. (March 24, 2008) (explaining that, under the proposed amendments, when a felony defendant is found incompetent, the defendant must be referred for evaluation and treatment "in hopes that they can be made competent").

[35] *Jackson v. Indiana*, 406 U.S. 715, 738 (1972).

[36] *Id.* at 720-21.

attain competency in the foreseeable future, the Supreme Court found that it was unconstitutional.[37]

On appeal, R.B. contends that *Jackson* stands for the proposition that if there is no reason at the outset to believe treatment is likely to restore a defendant to competency, then no period of commitment can be justified in accordance with substantive due process, and the mandatory commitment provision of AS 12.47.110(a) for incompetent defendants charged with a felony is, therefore, unconstitutional. As we are about to explain, we do not construe *Jackson* in this way.

Like the Alaska statute challenged by R.B., the comparable federal commitment statute — 18 U.S.C. § 4241(d) — mandates the commitment of incompetent criminal defendants in the absence of any finding regarding restorability. The federal statute provides that, if a court finds that a defendant is incompetent,

> the court shall commit the defendant . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward.[38]

Thus, the federal commitment statute does not require a court to assess whether a defendant is restorable prior to ordering their commitment.[39] Instead, just as Alaska's statute requires an incompetent felony defendant to be committed for further

---

[37] *Id.* at 738.

[38] 18 U.S.C. § 4241(d).

[39] *Id.*; *United States v. McKown*, 930 F.3d 721, 727 (5th Cir. 2019) (noting that under 18 U.S.C. § 4241(d), commitment is mandatory upon a finding of incapacity "irrespective of the defendant's initial prognosis"); *United States v. Strong*, 489 F.3d 1055, 1062 (9th Cir. 2007) (rejecting Strong's argument that 18 U.S.C. § 4241(d) violates due process because it "provides for the commitment of restorable and non-restorable defendants alike"); *United States v. Shawar*, 865 F.2d 856, 861 (7th Cir. 1989) (noting that the "likelihood of recovery is not something to be considered by the district court in deciding whether to commit the defendant for the evaluation period").

evaluation to assess whether and how the defendant may be restored to competency, 18 U.S.C. § 4241(d)(1) similarly requires commitment in order to "determine whether there is a substantial probability that in the foreseeable future" the defendant can be restored to competency.

Although the federal commitment statute was enacted in direct response to the Supreme Court's opinion in *Jackson*,[40] it nevertheless has been the subject of repeated due process challenges. All of the federal appellate courts that have considered such challenges have rejected them, holding that the statute complies with due process.[41]

The Ninth Circuit Court of Appeals' opinion in *United States v. Strong* is representative of the way federal courts have addressed these due process challenges. In *Strong*, the Ninth Circuit held that the mandatory commitment provision in 18 U.S.C. § 4241(d) did not run afoul of the Supreme Court's holding in *Jackson*.[42] It observed that *Jackson* set out two factors for determining whether the commitment of an incompetent defendant violates due process: (1) whether the duration of the commitment is reasonable, and (2) the closeness of the fit between the commitment and the purpose for which such commitment is designed. Applying these factors, the court

---

[40] *Strong*, 489 F.3d at 1061 ("[18 U.S.C.] § 4241(d) was enacted in response to the *Jackson* decision and echoed *Jackson*'s language."); *United States v. Filippi*, 211 F.3d 649, 652 (1st Cir. 2000) ("[18 U.S.C. § 4241(d)] is self-evidently built upon *Jackson*."); *United States v. Donofrio*, 896 F.2d 1301, 1302 (11th Cir. 1990) ("[18 U.S.C. § 4241(d)] was passed in response to the Supreme Court decision in *Jackson*."); *Shawar*, 865 F.2d at 864 ("Congress clearly was aware of the Court's decision in *Jackson*, and echoed its language in [18 U.S.C.] § 4241(d).").

[41] *Filippi*, 211 F.3d at 651-52; *Strong*, 489 F.3d at 1061-63; *Donofrio*, 896 F.2d at 1302-03; *McKown*, 930 F.3d at 728; *Shawar*, 865 F.2d at 863-64; *United States v. Brennan*, 928 F.3d 210, 216-18 (2d Cir. 2019); *United States v. Dalasta*, 856 F.3d 549, 554 (8th Cir. 2017); *United States v. Ferro*, 321 F.3d 756, 762 (8th Cir. 2003); *United States v. Anderson*, 679 F. App'x 711, 713 (10th Cir. Feb. 16, 2017) (unpublished).

[42] *Strong*, 489 F.3d at 1061-63.

concluded that the duration of the commitment authorized by the federal statute is reasonable because it is limited to a maximum of four months, and because the statute provides a mechanism for early release. The court also concluded that the defendant's commitment bore a reasonable relation to the purpose for the commitment, which was to evaluate whether the defendant was "susceptible to timely restoration."[43]

The court explained that requiring the commitment of a defendant for purposes of conducting an evaluation to determine the defendant's restorability was a reasonable legislative decision because such a determination requires a more careful and accurate diagnosis than the brief interviews and review of medical records that tend to characterize initial competency proceedings. Moreover, because most conditions resulting in incompetency are capable of some improvement, mandatory commitment "appropriately affords additional time during which the Attorney General may explore medical options."[44] The court thus concluded that the mandatory commitment provision does not violate principles of substantive due process, even if the medical evidence available at the outset indicates that the defendant's condition is permanent.[45]

We reach the same conclusion with regard to the mandatory commitment provision of AS 12.47.110(a). In contrast to the Indiana statute at issue in *Jackson*,

---

[43]   *Id.* at 1062.

[44]   *Id.* (quoting *Ferro*, 321 F.3d at 762).

[45]   *Id.* ("[E]ven where the available evidence indicates that a criminal defendant's mental condition is irreversible, Congress 'could reasonably think that, in almost all cases, temporary incarceration would permit a more careful and accurate diagnosis before the court is faced with the serious decision whether to defer trial indefinitely and (quite often) to release the defendant back into society.'" (quoting *Filippi*, 211 F.3d at 651)); *see also McKown*, 930 F.3d at 728 ("[E]ven where the medical evidence indicates that the defendant's condition is permanent, temporary hospitalization bears some reasonable relation to the purpose for that confinement.").

which provided for an indefinite period of commitment,[46] the duration of commitment under AS 12.47.110 is expressly limited. It contains a cap on the maximum length of time a defendant may be committed,[47] and it also allows the defendant to gain early release if they are restored to competency or if the charges against them are otherwise disposed of according to law.[48] Thus, AS 12.47.110(a) provides a "flexible and case-oriented" approach to determining the length of commitment, keeping it within "the rule of reasonableness" announced in *Jackson*.[49]

Furthermore, unlike the Indiana statute at issue in *Jackson*, which required commitment "solely on account of [the defendant's] incapacity" with no other articulated purpose for the commitment,[50] AS 12.47.110 clearly provides two distinct purposes for committing an incompetent defendant: (1) further evaluation and (2) treatment. These stated purposes are closely related to the important governmental interest in bringing an accused to trial and its related interest in assuring that the

---

[46]  *Jackson v. Indiana*, 406 U.S. 715, 720-21 (1972).

[47]  *See* AS 12.47.110 (providing for a maximum of two ninety-day periods of confinement unless the defendant is charged with a crime involving force against a person and the court finds that the defendant presents a substantial danger of physical injury to other persons and there is a substantial probability that the defendant will regain competency within a reasonable period of time, in which case the court may extend the commitment up to an additional six months).

[48]  AS 12.47.110(a).

[49]  *See Filippi*, 211 F.3d at 652 (holding that 18 U.S.C. § 4241(d) provides a "flexible and case-oriented" approach to determining the length of incarceration); *McKown*, 930 F.3d at 728 (holding that 18 U.S.C. § 4241(d) complies with *Jackson*'s rule of reasonableness because it had a flexible and case-oriented approach to determining the length of confinement).

[50]  *Jackson*, 406 U.S. at 731.

defendant's trial is a fair one, and thus the statute comports with the federal substantive due process principles articulated in *Jackson*.[51]

R.B. acknowledges the federal approach, but he contends that because AS 12.47.110 provides for mandatory commitment of felony offenders while giving courts discretion over whether to commit misdemeanor offenders, it is akin to a statute that the Georgia Supreme Court invalidated as unconstitutional in *Carr v. State*.[52]

In Georgia, incompetent defendants charged with violent offenses were required to be taken into physical custody for an initial commitment period of up to ninety days. (Trial courts' discretionary authority to allow outpatient restoration treatment was permitted only for incompetent defendants charged with nonviolent offenses.) Carr, an incompetent criminal defendant charged with violent offenses, was committed under this mandatory provision. On appeal, he argued that, because he was out on bond, ordering him into custody on the sole basis that he was incompetent to stand trial would violate his due process and equal protection rights.[53]

The Georgia Supreme Court agreed, and held that the statutory mandate requiring the automatic detention of incompetent defendants, without an individualized determination of whether confinement reasonably advances the government's purpose, violated the defendant's right to due process.[54] The supreme court observed that the statutory provision allowing outpatient evaluation as an option for defendants who were accused of nonviolent offenses reflected a legislative determination that confinement in a department facility was not required for an accurate evaluation. It further noted that the kind of crime the defendant allegedly committed bears no obvious relationship to

---

[51]  *See Filippi*, 211 F.3d at 652.

[52]  *Carr v. State*, 815 S.E.2d 903, 913-16 (Ga. 2018).

[53]  *Id.* at 906-07.

[54]  *Id.* at 916.

the appropriate process for evaluating whether the defendant will attain competency in the foreseeable future. In fact, in Carr's case, the trial court had already determined, when it released him on bond, that he was not a danger to the community.

Thus, the trial court's sole basis for requiring Carr's commitment was his incompetence, and the supreme court ruled that, by depriving defendants of their liberty solely on the basis of their incompetence, the Georgia statute violated due process. According to R.B., AS 12.47.110(a), like the Georgia statute, is unconstitutional without an individualized showing that commitment is necessary.

But Alaska's statute reflects a different legislative determination. Under Alaska law, whenever a court orders further evaluation and treatment of an incompetent defendant, the defendant must be committed to the custody of the Commissioner of Family and Community Services.[55] Unlike the Georgia law struck down in *Carr*, Alaska's commitment statute does not use the nature of the offense to determine *where* the restoration and evaluation should occur (either in an inpatient or outpatient context), but *whether* such efforts should be made at all. And unlike Georgia, Alaska does not have an outpatient facility that provides evaluation and treatment of incompetent defendants.

R.B. notes that AS 12.47.110 treats defendants accused of felonies differently than it treats those charged only with misdemeanors. Under AS 12.47.110, the court is required to commit an incompetent felony defendant for further evaluation and treatment. By contrast, if an incompetent defendant is charged only with misdemeanors, the court is empowered to exercise its discretion to either commit the defendant for further evaluation and treatment or to dismiss the charges. R.B. claims that because Alaska courts are not required to order the commitment of all incompetent defendants, commitment is not closely related to the statutory purposes of evaluating and treating criminal defendants.

---

[55] AS 12.47.110(a).

But the government has a legitimate interest in bringing an accused to trial, and this interest becomes stronger the more serious the degree of crime.[56] Alaska's statute requiring further evaluation and treatment of incompetent defendants charged with felonies but not similarly mandating further evaluation and treatment of incompetent defendants charged with misdemeanors is therefore a reasonable legislative decision that reflects this heightened government interest.

We accordingly reject R.B.'s facial challenge to AS 12.47.110, and we hold that the statute's mandatory initial commitment requirement for incompetent defendants charged with a felony does not violate a defendant's right to substantive due process. Moreover, because the legislature could reasonably conclude that judicial findings regarding the restorability of an incompetent felony defendant should not be made until the defendant has been evaluated and treated, we conclude that, in the majority of felony cases, courts should refrain from making findings regarding a defendant's restorability until that evaluation and treatment has occurred.

We acknowledge, as the State does in its briefing, that there may be rare felony cases in which the evidence of non-restorability at the initial competency hearing is so overwhelming and irrefutable that commitment would deprive the defendant of their right to due process. But in the vast majority of felony cases, the court may properly decline to make such a predictive finding. It is only in extreme felony cases — such as when a defendant suffers from a severe static cognitive deficit, or when the defendant has been recently committed for restoration treatment without success — that courts should make a finding regarding restorability rather than waiting for the additional information that will be provided by the initial mandatory commitment required for felony defendants.

In R.B.'s case, the purpose of Lobb's evaluation of R.B. was to determine whether he was competent, not to determine whether he was restorable. Lobb conducted

---

[56] *See Sell v. United States*, 539 U.S. 166, 180 (2003).

only one interview of R.B. — an interview conducted by videoconference with R.B. participating via cell phone, during which R.B. was not fully cooperative. Given these circumstances, the superior court's decision to follow the statute and to commit R.B. for further evaluation and treatment at API before making any final determination about R.B.'s restorability was both reasonable and in accord with the underlying legislative intent.[57]

For these reasons, we conclude that under AS 12.47.110, the court must commit an incompetent felony defendant to the custody of the Commissioner of Family and Community Services for further evaluation and treatment and, except in rare cases not presented here, is not required to rule on restorability prior to the defendant's initial commitment. We also conclude that that this statute does not violate R.B.'s due process rights under either the United States or the Alaska constitution.

*Why we reject R.B.'s claim that due process requires a finding that involuntary commitment is the least restrictive method of restoring competency*

On appeal, R.B. contends that due process principles prevent the court from ordering the commitment of incompetent felony defendants without first conducting an individualized analysis of whether less restrictive alternatives are available to further the purpose of the commitment — such as outpatient evaluations and treatment. According to R.B., AS 12.47.110 does not require such an analysis, and as a result, it is unconstitutional.

---

[57] *See United States v. Strong*, 489 F.3d 1055, 1062 (9th Cir. 2007) (citing *United States v. Ferro*, 321 F.3d 756, 762 (8th Cir. 2003)) (noting that restorability determinations ordinarily require a more careful and accurate diagnosis than the brief interviews and review of medical records that the initial competency proceedings can provide).

R.B. did not make this argument to the superior court nor secure a ruling from the superior court on such a claim, and thus he must show plain error.[58] Because he did not address the requirements of plain error in his arguments on appeal, he has waived this challenge to the constitutionality of AS 12.47.110(a).

But even if this claim was not waived, R.B. provides scant authority for it. His argument is based primarily on his interpretation of the legislative history of AS 12.47.110(a) — that the purpose of this statute is to civilly commit incompetent criminal defendants — and on the Alaska Supreme Court's cases governing *civil* commitment, which require courts to consider whether less restrictive alternatives to such a commitment are available.[59]

But we have rejected R.B.'s claim that the purpose for commitment under AS 12.47.110(a) is solely to facilitate the subsequent civil commitment of incompetent defendants. We accordingly also reject his claim that the constitutional requirements regarding civil commitments apply equally to competency restoration commitments required in criminal cases.

We instead have concluded that the purpose for commitment under AS 12.47.110(a) is to provide further evaluation of, and restoration treatment for, incompetent criminal defendants. As we have explained, because such commitment complies with the test set out in *Jackson*, the statute does not run afoul of the due process requirements of the federal constitution.[60]

---

[58] *Adams v. State*, 261 P.3d 758, 773 (Alaska 2011) (holding that a plain error is an obvious error which did not result from an intelligent waiver or a tactical decision not to object, affected substantial rights, and resulted in prejudice).

[59] *See, e.g.*, *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 378 (Alaska 2007), *overruled on unrelated grounds by In re Naomi B.*, 435 P.3d 918 (Alaska 2019).

[60] *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972); *United States v. McKown*, 930 F.3d 721, 728 (5th Cir. 2019); *Strong*, 489 F.3d at 1062-63; *United States v. Filippi*, 211 F.3d 649, 652 (1st Cir. 2000).

To the extent that R.B.'s argument is based on *state* due process principles, he has not identified anything in the text, context, or history of the Alaska Constitution that would justify a divergent interpretation of the substantive due process requirements for incompetency commitments in criminal cases.[61] We accordingly reject R.B.'s claim that AS 12.47.110(a) is facially unconstitutional because it does not require courts to conduct a least restrictive alternative analysis before ordering the commitment of an incompetent felony defendant.

*Why we conclude courts must require the Commissioner of Family and Community Services to promptly notify the court if the defendant has been restored to competency or if it is unlikely that the defendant will be restored to competency within the maximum period of commitment*

The superior court's order in this case states the "judge's chambers must be promptly notified . . . if . . . the defendant's custodian considers the defendant to be mentally competent to stand trial." However, it does not similarly order prompt notification if "the defendant's custodian" determines that R.B. is *not* likely to be restored to competency within the maximum period of commitment.

As we have explained, the mandatory commitment provision of AS 12.71.110 is constitutional in part because of its "flexible and case-oriented" approach to determining the length of commitment, which comports with the rule of reasonableness announced in *Jackson*.[62] Indeed, the statute expressly allows the defendant to gain early release if they are restored to competency or if the charges against them are otherwise disposed of according to law.[63]

---

[61] *See State v. Zerkel*, 900 P.2d 744, 758 n.8 (Alaska App. 1995).

[62] *See Filippi*, 211 F.3d at 652; *McKown*, 930 F.3d at 728.

[63] AS 12.47.110(a).

– 24 –

2751

We conclude that the court's commitment order accordingly must reflect this approach, ensuring that a defendant's commitment ends when it no longer bears a reasonable relationship to the dual purposes of the commitment — *i.e.*, to conduct further evaluation and to provide restoration treatment. Thus, a court's commitment order should ensure that the commitment ends once the defendant is restored to competency, or when it becomes clear that further treatment is unlikely to restore their competency within the maximum time set out under AS 12.47.110.

Thus, when a court orders a defendant to be committed under AS 12.47.110, the court should order the Commissioner of Family and Community Services (or their representative) to notify the court if either of these conditions occurs. This will allow the court to expeditiously conduct a hearing to determine whether the defendant remains incompetent and, if the defendant has been restored to competency or if they cannot be so restored, to end the defendant's commitment.

*Conclusion*

For the reasons explained in this opinion, we conclude that the mandatory nature of the commitment required by AS 12.47.110 does not offend principles of substantive due process. We further conclude that the court is not required at the outset to determine whether or when the defendant may be restored to competency. In fact, one reason to commit the defendant is to allow the Commissioner of Family and Community Services to conduct further evaluation that will help the court make these determinations. Lastly, we conclude that due process requires that when a court orders a defendant to be committed under AS 12.47.110, the court's order must instruct the Commissioner to notify the court as soon as practicable if the evaluators and treatment providers determine that the defendant is not likely to be restored to competency within the maximum period of commitment or that the defendant has been restored to competency. And when a court receives either of these types of notices, it should

expeditiously conduct a hearing to determine whether continued commitment is warranted.

We AFFIRM the superior court's order requiring R.B.'s commitment, but we REMAND this matter to the superior court for issuance of an amended commitment order as described in this opinion.